Judge OHLSON
delivered the opinion of the Court.
A panel of officer and enlisted members sitting as a general court-martial convicted Appellant/Cross-Appellee [hereinafter Appellant], contrary to his pleas, of one specification of wrongful sexual contact in violation of Article 120(m), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920(m) (2006).[1]
At Appellant’s court-martial, both trial defense counsel and trial counsel elicited testimony from the victim’s husband about whether he believed his wife’s account of the *323 sexual encounter. Upon appellate review, the United States Navy-Marine Corps Court of Criminal Appeals held that this testimony constituted inadmissible “human lie detector testimony,” but it affirmed Appellant’s conviction, concluding that the admission of the testimony did not constitute plain error because it did not materially prejudice Appellant’s substantial rights. United States v. Martin, No. NMCCA 201400315, 2015 CCA LEXIS 250, at *9-13, 2015 WL 3793707, at *5 (N-M. Ct. Crim. App. June 18, 2015) (unpublished).
We granted review in this case on the following issue:
Whether the Court of Criminal Appeals erred in holding th¿t the human lie detector testimony offered by the alleged victim’s husband was not materially prejudicial.
United States v. Martin, 75 M.J. 59, 59 (C.A.A.F.2015) (order granting review). Following our grant of review, the Judge Advocate General of the Navy certified the following issue for review:
Did trial defense counsel invite error when he opened the door to human lie detector testimony during the cross-examination of the victim’s husband?
United States v. Martin, 75 M.J. 109, 109 (C.A.A.F.2015) (certificate for review),[2]
We hold that under the circumstances of this ease, trial defense counsel did invite error when, in the course of conducting cross-examination, he was the first party to elicit human lie detector testimony from the same witness on the same evidentiary point. We therefore answer the certified issue in the affirmative and do not reach the granted issue.
I. Background
In September of 2011, Cl[3] and her husband, Corporal (Cpl) AI, attended a pajama party at Appellant’s on-base home. Appellant was Cl’s platoon sergeant and direct supervisor at that time. After Cl became intoxicated at the party, Cl and Cpl AI went to sleep in Appellant’s guest bedroom. Cpl AI slept on the side of the bed closest to the wall while Cl slept on the side of the bed closest .to the bedroom door. Cl testified at trial that she awoke to Appellant kneeling’ by the bed, placing his hand beneath her underwear, and inserting his fingers in her vagina. When Cl rolled over to try to wake her husband, Cpl AI told her to stop and to let him sleep. Appellant left the bedroom as Cl tried to wake her husband.
At trial, the Government called Cl’s husband to testify. On direct examination, trial counsel asked Cpl AI about the night of the party, to include the following questions:
Q. Now, after you fell asleep that night, do you have any recollection of touching your wife in a sexual manner?
A. No, sir.
Q. In your mind, is there any chance that you could’ve digitally penetrated or put your fingers inside your wife’s vagina?
A. No, sir.
Q. Why do you say that?
A. It’s never happened before. I have never woken up and just done something
like that with my wife.
Q.- And you said it has never happened before that. Has anything like that ever happened since that?
A. No, sir.
[[Image here]]
Q. When you originally talked to NCIS you told NCIS that you thought it possibly could have been you who had touched your wife?
A. Yes, sir.
Q. Why did you say that?
A. I’m the kind of person that if it’s even remotely an option I think about it like *324 that. I guess I’m, like, a by-the-numbers-type of person. So, I mean, my wife could have thought about, you know, maybe it could have been another night. But'just the way she has been since then, then I know it wasn’t me. She wouldn’t be acting the way she does nowadays, like, if it would have been me, Even if it was something that she wasn’t expecting from me she wouldn’t be acting that way.
On cross-examination, trial defense counsel inquired into Cpl AI’s doubts about Cl’s account of the touching:
Q. When she initially told you, she didn’t give anything in detail, did she?
A. No, sir.
Q. And you initially thought that maybe she imagined it?
A. I just—I was kind of in disbelief.
Q, You thought maybe she dreamed it?
A, Something like that, sir, yes.
Q. The story didn’t really make too much sense to you?
A. I just figured that if something like that would have happened then .... where was I in this? ... [I]f something like that were to happen to me, sir, I would—I would have stopped it or done something, like, instantly, sir.
[[Image here]]
Q. [A]t no point after [she told you about the assault,] ,.. you never went and reported it to anyone, did you?
A. I honestly ... [it’s] not like I didn’t believe her, sir. But it, kind of, it didn’t make too much sense to me....
Q. Okay. So you weren’t entirely convinced that this happened then?
A. No, sir.
Q. And you told NCIS that?
A. Yes, sir.
Q. You thought that, hey, maybe ... it happened[,] maybe [it] didn’t happen?
A, Yes, sir.
Trial counsel did not object to this questioning. Instead, on redirect, trial counsel had this exchange with Cpl AI:
Q. Now, you just told the defense counsel that you had your doubts?
A. Yes, sir.
Q. You do believe your wife, though, correct?
A. I do, sir.
Q. And she’s telling the truth?
A. She is, sir.
Q. And why do you think that?
A. The way ... that it’s affected her, the way that she’s changed, the way that it’s affected our marriage—the way that it’s negatively impacted us just as a family— we have two kids, we have three dogs, and she’s just depressed. And I understand that a mother is, obviously, is stressed out from all that, especially with me deploying again. But even on good days, she’ll just snap sometimes. And just the way that it’s affected her, something as big as it had on her wouldn’t have happened over a small situation, sir,
Trial defense counsel did not object to this testimony. At no point during cross-examination or redirect did the military judge intervene to stop this human lie detector testimony or provide the members with a curative instruction.
II. Applicable Legal Principles
Human lie detector evidence is elicited when a witness provides “an opinion as to whether [a] person was truthful in maldng a specific statement regarding a fact at issue in the case.” United States v. Knapp, 73 M.J. 33, 36 (C.A.A.F. 2014) (citation omitted) (internal quotation marks omitted). “There is no litmus test for determining whether a witness has offered ‘human lie detector’ eyi-dence.” United States v. Jones, 60 M.J. 964, 969 (A.F. Ct. Crim. App. 2005). If a witness does not expressly state that he believes a person is truthful, we examine the testimony to determine if it is the “functional equivalent of’ human lie detector testimony. See United States v. Brooks, 64 M.J. 325, 329 (C.A.A.F. 2007). Testimony is the functional equivalent of human lie detector testimony when it invades the unique province of the court members to determine the credibility of witnesses, and the substance of the testimony leads the members to infer that the witness believes the victim is truthful or deceitful with respect to an issue at trial. See United *325 States v. Mullins, 69 M.J. 113, 116 (C.A.A.F. 2010); Brooks, 64 M.J. at 329. Human lie detector evidence is inadmissible at a court-martial, see Knapp, 73 M.J. at 36, because it is a “fundamental premise of our criminal trial system [that] ‘the [panel] is the lie detector’ ” and “[d]etermin[es] the- weight and credibility of witness testimony,” United States v. Schaffer, 623 U.S. 303, 313, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (quoting United States v. Barnard, 490 F.2d 907, 912 (9th Cir. 1973)).
Although it is inadmissible, we will not find reversible error from the introduction of human lie detector evidence at trial when the accused invites its admission. See United States v. Schlamer, 52 M.J. 80, 86 (C.A.A.F. 1999); United States v. Eggen, 51 M.J. 159, 161-62 (C.A.A.F. 1999); United States v. Raya, 45 M.J. 251, 254 (C.A.A.F. 1996). The invited error doctrine prevents a party from “ereat[ing] error and then tak[ing] advantage of a situation of his own making [on appeal].” Eggen, 51 M.J. at 162 (internal quotation marks omitted) (quoting Raya, 45 M.J. at 254), As a result, “[i]nvited error does not provide a basis for relief.” Raya, 45 M.J. at 254; United States v. Crigler, 10 C.M.A. 263, 265, 27 C.M.R. 337, 339 (1959); United States v. Beer, 6 C.M.A. 180, 185, 19 C.M.R. 306, 311 (1955). The question of whether trial defense counsel invited an error at trial is a question of law, which we review de novo. See United States v. Paul, 73 M.J. 274, 277 (C.A.A.F. 2014) (“This Court reviews questions of law de novo.”).
III. Discussion
We conclude that Cpl AI’s testimony on direct examination did not rise to the level of actual human lie detector testimony, nor did it constitute the functional equivalent of human lie detector testimony. We further conclude that although trial ■ counsel did elicit human lie detector testimony on redirect examination, trial defense counsel invited the error by cross-examining Cpl AI about his doubts regarding Cl’s account.
Appellant raises two arguments to try to convince us otherwise. First, Appellant suggests that the real reason trial counsel decided to call Cpl AI as a witness was to introduce human lie detector testimony, and thus the Government’s improper conduct was the root cause of any error that followed.
We disagree. The Government had a proper purpose in calling Cpl AI to testify—he was a fact witness who attended Appellant’s party and could provide the panel members with significant details about the events leading up to the sexual contact, and he was sleeping in the same bed right next to Cl when the sexual contact occurred. Had Cpl AT not testified, the members would have understandably speculated about his absence at trial. Further, based on -Cpl AI’s initial statement to NCIS about the incident, the Government had a legitimate reason to inoculate itself against defense assertions that Cpl AI, not Appellant, was responsible for touching Cl. Additionally, it appears that Appellant did not seek to block Cpl AI’s testimony at trial for good reason—trial defense counsel wanted to use Cpl AI’s own doubts about Cl’s story to try to create reasonable doubt in the minds of the panel members. Accordingly, we„. find an insufficient basis to conclude that the Government’s decision to call Cpl AI as a witness was for the improper motive of introducing human lie detector testimony, and we find no basis to conclude that this step by the Government somehow invited trial defense counsel to do so.
Second, Appellant argues that the following exchange between trial counsel and' Cpl AI on direct examination opened the door to the defense’s introduction of human lie detector testimony on cross-examination:
Q. When you originally talked to NCIS you told NCIS that you thought it possibly could have been yoh who had touched your wife?
A Yes, sir.
Q. Why did you say that?
A I’m the kind of person that if it’s even remotely an option I think about it like that. I guess I’m, like, a by-the-numbers-type of person. So, I mean, my wife could have thought about, you know, maybe it could have been another night. But just the way she has been since then, then I know it wasn’t me. She wouldn’t be acting *326 the way she does nowadays, like, if it would have been me. Even if it was something that she wasn’t expecting from me she wouldn’t be acting that way.
Q. And you, kind of, already alluded to this but is this something that is typical in your relationship with your wife?
A. Is what typical, sir?
Q. You know, in the middle of the night touching or penetrating your wife’s vagina in this way?
A. No, sir. If anything it would be rolling over. I might put my hand on my wife’s chest, on her legs—on the side of her legs. Like, cuddling, I guess, is the best way to describe it, sir. But nothing of extreme sexual, [sic]
Q. You mentioned that she’s been a little different. How has your wife’s behavior been different after this assault occurred?
A. She’s ... always been, like, jumpy if you startled her, like anybody would be. But I remember times, like probably the biggest time—like I remember is she was ... cooking something in the kitchen. Like the stove was on, I came up behind her, I put my arms around and, like she hit ... something off the stove just because she freaked out. And probably another, like, main thing I think of is if—obviously, you can’t hear' very well in the shower. If I ever, like, walked into the bathroom while she was showering—she would, like, not scream but like get jumpy just because ... she knows it’s me. I would assume she knows it’s me who is walking in to the room but it just freaks her out.
According to Appellant, this testimony “provide[d] the members an explanation of why [Cpl AI] initially doubted his wife, but grew to believe in the truth of her allegation.” Appellant’s Reply/Cross Appellee’s Answer at 6, United States v. Martin, Nos. 15-0754 & 16-0122 (C.A.A.F. Jan. 20, 2016).
We disagree. As even Appellant conceded at oral argument, Cpl AI did not expressly state during direct examination that he believed his wife. See Knapp, 73 M.J. at 36. That does not end our inquiry, however. As noted above, even if a witness does not expressly state whether he believes a witness, we examine the witness’s testimony to determine if it constitutes the “functional equivalent” of human lie detector testimony.
In applying the functional equivalency standard to the instant case, we note that the relevant portions of Cpl AI’s testimony on direct examination can be separated into two categories. First, Cpl AI testified that although he initially had questioned whether he might have digitally penetrated his wife on the night of the incident, he ultimately had concluded that he had not done so. This testimony focused on Cpl AI’s own conduct, not on the truthfulness of his wife.
Second, Cpl AI testified about how his wife’s behavior had changed since the night of the incident. We conclude that this constituted permissible lay testimony. It was based on Cpl AI’s personal knowledge and perceptions of his wife’s conduct after the alleged assault. This testimony was not based on specialized or scientific knowledge; Cpl AI merely provided his personal observations of Cl’s behavior. Therefore, we conclude that Cpl AI’s testimony on direct was not the functional equivalent of human lie detector evidence because it did not provide a sufficient inference that he believed Cl was being truthful.[4] See Mullins, 69 M.J. at 116. Cpl AI’s testimony on direct examination was therefore admissible under Military Rule of Evidence 701. Cf. United States v. Roberson, 65 M.J. 43, 47 (C.A.A.F. 2007) (holding that witness’s opinion of a person’s reaction to hearing a statement was admissible lay testimony based on personal observation). As a. consequence, we further conclude that by eliciting this testimony on direct examination, the Government did not open the door for the defense to elicit human lie detector testimony on cross-examination. Cf. United States v. Savala, 70 M.J. 70, 71 (C.A.A.F. 2011) (noting that cross-examination may inquire *327 into otherwise inadmissible evidence if the prosecution opens the door on direct examination).
However, as even the Government concedes, its redirect questioning of Cpl AI clearly elicited human lie detector testimony by asking Cpl AI whether he believed his wife and whether he thought she was telling the truth. See Knapp, 73 M.J. at 36. We therefore must determine whether trial defense counsel invited this error through his cross-examination of Cpl AI.
We conclude that trial defense counsel’s cross-examination of Cpl AI invited the admission of the Government’s human lie detector evidence. On cross-examination, the defense prodded and probed Cpl AI at considerable length about Cpl AI’s initial doubts about his wife’s version of events. Specifically, trial defense counsel asked Cpl AI this series of questions:
Q. And you initially thought that maybe she imagined it?
Q. You thought maybe she dreamed it?
Q. The story didn’t really make too much sense to you?
Q. So you weren’t entirely convinced that this happened then?
Q. You thought that, hey, maybe—it happened[,] maybe [it] didn’t happen?
Accordingly, it should not have come as a surprise to trial defense counsel that when, in the middle of this series of questions, he asked Cpl AI, “[Y]ou never went and reported [the assault] to anyone, did you,” that Cpl AI responded by expressing his view that his wife was being truthful: “[It’s] not like I didn’t believe her, sir.” Under these circumstances, we conclude both that Cpl AI’s response constituted human lie detector testimony, and that the questions by trial defense counsel foreseeably elicited that testimony. See Knapp, 73 M.J. at 36.
Because trial defense counsel first elicited human lie detector evidence on cross-examination, the invited error doctrine precludes Appellant from complaining about the Government’s elicitation of this type of evidence on redirect. See United States v. Baker, 432 F.3d 1189, 1216 (11th Cir. 2005) (“[A] defendant can ‘invite’ non-responsive testimony when he insists on pursuing a line of questioning after it becomes apparent that further cross-examination will elicit potentially damaging testimony, and fails to object to the non-responsive answer when it is given.”), abrogated on other grounds by Davis v. Washington, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Trial counsel was merely eliciting the same type of human lie detector testimony from the same witness on the same evidentiary point. This is not prohibited. See Eggen, 51 M.J. at 162 (“[T]he actions by the defense counsel opened the door for [the redirect]' examination by the prosecutor. Any error was induced or ‘invited’ by the defense.”). Otherwise, preventing the Government from walking through the door already opened by the defense would have left the members with a skewed view of the evidence. See United States v. Banks, 36 M.J. 150, 162 (C.M.A. 1992) (noting that evidence “may be admitted in rebuttal when a party ‘opens the door’ by introducing potentially misleading testimony”) (citation omitted); see also United States v. Segines, 17 F.3d 847, 856 (6th Cir. 1994) (allowing evidence on the same issue “to rebut any false impression that might have resulted from the earlier admission”) (citation omitted) (internal quotation marks omitted). Thus, the defense “open[ed] the door to prosecution rebuttal.” Schlamer, 52 M.J. at 86. Appellant cannot now complain on appeal about the admission of the human lie detector evidence.[5]
IV. Decision
We answer the certified issue in the affirmative and therefore do not reach the granted issue. Accordingly, the decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

. The members acquitted Appellant of the greater offense of aggravated sexual assault and of two specifications of wrongful sexual contact, all of which are in violation of Article 120, UCMJ. Appellant’s adjudged and approved sentence provided for a reduction to the pay grade of E-l and a bad-conduct discharge.

. We heard oral argument in this case at Maxwell Air Force Base, Montgomery, Alabama, as part of the Court's "Project Outreach.” See United States v. Mahoney, 58 M.J. 346, 347 n. 1 (C.A.A.F.2003). This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

, At the time of the events relevant to this appeal, CX was a private first class in the Marine Corps. However, she had separated from the Marine Corps by the time of Appellant's trial, Therefore, this opinion will refer to her as Cl.

. We recognize that the members might have inferred from Cpl AI's testimony that he believed Cl. However, this is not a dispositive factor in .our analysis of this case. In any court-martial members might understandably assume that a husband who is testifying at trial on behalf of the prosecution believes his wife is telling the truth about an alleged sexual assault.

. Moreover, trial defense counsel never objected to the Government’s elicitation of human lie detector testimony. Appellant certainly cannot show that the military judge’s acquiescence to the introduction of this counterbalancing human lie detector testimony was plainly erroneous. See Schlamer, 52 M.J. at 86; Eggen, 51 M.J. at 162.