# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant First Class JESSE M. THOMPSON**
**United States Army, Appellant**

ARMY 20180519

Headquarters, 82d Airborne Division
Fansu Ku and Christopher E. Martin, Military Judges
Colonel Travis L. Rogers, Staff Judge Advocate

For Appellant: Lieutenant Colonel Angela D. Swilley, JA; Major Kyle C. Sprague, JA; Captain Thomas J. Travers, JA (on brief and reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Jonathan S. Reiner, JA; Captain Anthony A. Contrada, JA (on brief).

23 November 2020

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

Appellant claims the military judge erred in denying a defense motion under Rule for Courts-Martial [R.C.M.] 914 to strike the victim's direct testimony because of an alleged government failure to produce a lost timeline created by the victim.[1]

---

[1] A military judge sitting as a general court-martial convicted appellant, pursuant to his plea, of one specification of adultery, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. Contrary to his plea, the military judge convicted appellant of one specification of solicitation of production of child pornography, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The military judge sentenced appellant to a bad-conduct discharge and confinement for twenty-four months. The convening authority approved the sentence as adjudged.

As we explain below, we find the military judge did not err and affirm the findings and sentence.[2]

## BACKGROUND

Appellant was DS's uncle by marriage. DS testified she first met appellant in 2009 when she was approximately thirteen or fourteen years old. During family visits, appellant and DS would play card games together, wrestle, and appellant would tickle her. Around DS's sixteenth birthday, in November 2012, appellant started sending DS private Facebook messages complimenting her looks.

Their messages progressed into daily Skype sessions. During their Skype sessions, appellant would ask DS to undress for him and to show him her breasts and vagina. The Skype sessions progressed to where appellant would request DS masturbate on camera, or appellant would masturbate while DS watched. Appellant would also request DS send him nude photos of herself. These Skype sessions constituted the basis for appellant's conviction to soliciting the production of child pornography on one or more occasions.

Eventually, in September 2015, DS's mother, MC, discovered nude photos of DS and appellant on DS's iPad. MC immediately reported appellant's offenses to civilian law enforcement investigators. MC also took photographs of some handwritten journal entries made by DS detailing her interactions with and feelings regarding appellant. The entirety of DS's handwritten journal entries, however, were never recovered because DS burned them. DS testified at trial that appellant "told [her] to get rid of them." MC also provided civilian investigators with all of DS's electronic devices. A digital forensic examiner ultimately located several digital journal entries made by DS from January to March 2013 regarding appellant.

---

[2] We have considered appellant's two other assigned errors and find they merit neither discussion nor relief. In regards to appellant's claim of dilatory post-trial processing, appellant fails to identify, beyond mere speculation, how he was prejudiced. *See Barker v. Wingo*, 407 U.S. 514 (1972) (articulating four factors required for relief for unreasonable post-trial delay); *see also United States v. Moreno*, 63 M.J. 129, 140-41 (C.A.A.F. 2013) (noting "mere speculation" of prejudice is insufficient to prevail in a claim for relief from dilatory post-trial processing). Appellant also personally raised matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). One of appellant's *Grostefon* matters requests a correction to the promulgating order to accurately reflect appellant's pleas and the locations of each of the specifications of which he was convicted. The clerk's office will separately issue a certificate of correction to address these errors. We have given full and fair consideration to the other matter raised personally by appellant pursuant to *Grostefon*, and find it to be without merit.

After more than a year, the civilian law enforcement investigation regarding appellant was closed. Appellant's case was then transferred to the U.S. Army Criminal Investigation Command (CID).

Because of the passage of time, DS struggled to recall the dates of her in-person sexual interactions with appellant during family visits.[3] Prior to DS meeting with CID special agents to conduct a videotaped interview in April 2017, MC and DS attempted to create a timeline more accurately detailing when appellant and DS were in the same physical location. MC testified "[w]e knew that there were times that we had gotten together for different family functions . . . but we could not remember what happened when." In order to create the timeline, MC and DS looked at a calendar and through Facebook for photos of their visits with appellant to recall dates and locations. DS then brought this timeline with her to her CID interview. During the CID interview, DS had trouble recalling specific dates. DS told the CID agent that if he wanted specific dates she could refer to her notes in the timeline. The CID agent advised her to provide a timeline from her memory and he never asked her for her newly-created timeline. DS eventually lost the timeline.

At trial, the government initially offered the entirety of the recovered digital journal entries into evidence as a prior consistent statement to rebut the defense's implication that DS fabricated the allegations against appellant and was improperly influenced by MC. The military judge sustained the defense objection to admitting the entire exhibit as a prior consistent statement, but stated he would consider admitting a more limited version of the digital journal entries if offered. The government then offered a redacted version of the digital entries. The defense again objected stating that the digital entries were not admissible as a prior consistent statement. In the alternative, the defense requested that if the redacted digital entries were admitted, then all of the digital journal entries be should admitted. The military judge then, per defense's request, admitted all of the digital journal entries into evidence.[4]

---

[3] Appellant was also charged, but acquitted of, taking indecent liberties in the physical presence of DS on diverse occasions when she was under the age of sixteen years, in violation of Article 120, UCMJ.

[4] On appeal, appellant argues as an assigned error that the military judge erred in allowing "any portion" of the digital journal entries. We find this argument without merit for two reasons. First, the government's redacted digital journal entries from January to March 2013 were admissible as prior consistent statements under Mil. R. Evid. 801(d)(1)(B)(ii) to rebut the defense assertion that DS possessed a motive to fabricate allegations against appellant after MC's discovery of the nude photos in September 2015. *See United States v. Finch*, 79 M.J. 389, 395 (C.A.A.F. 2020) (holding prior consistent statement admissible to rebut an express or implied charge

(continued . . .)

3

At the end of DS's direct testimony, defense counsel moved to strike DS's testimony under R.C.M. 914 arguing the government failed to provide the remainder of the destroyed handwritten journal entries and the timeline to defense. Counsel explained that he had thought the handwritten journal entries and timeline were the same thing and only realized during DS's in-court testimony that these were two separate items. On appeal, appellant only claims the military judge erred with regard to the timeline. Thus, we will only address the military judge's ruling in regards to the timeline.[5]

## LAW AND DISCUSSION

On appeal, appellant asserts the military judge erred in denying the defense motion under R.C.M. 914 to strike DS's testimony due to the lost timeline. We review a military judge's decision to strike testimony under R.C.M. 914 for an abuse of discretion. *United States v. Muwwakkil*, 74 M.J. 187, 191 (C.A.A.F. 2015) (citations omitted). An abuse of discretion occurs when a military judge's findings of fact are clearly erroneous or his conclusions of law are incorrect. *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015) (citation omitted).

Rule for Courts-Martial 914(a) states "[a]fter a witness other than the accused has testified on direct examination, the military judge" upon motion of the opposing party shall order the production of "any statement of the witness that relates to the subject matter concerning which the witness has testified, and that is . . . [i]n the possession of the United States." The military judge has the discretion to strike the witness' testimony for failure to produce a statement that falls within the scope of the rule. R.C.M. 914(e). We agree with the military judge's ruling that DS's

---

(. . . continued)
the declarant recently fabricated the in-court testimony). Second, any error in admitting all of the digital journal entries was invited by defense when they requested that the entirety of the entries be entered into evidence. *See United States v. Martin*, 75 M.J. 321, 324-27 (holding appellant cannot complain on appeal about the admission of evidence defense elicited at trial).

[5] Even if we were to review the military judge's ruling in regards to the burned and lost handwritten journal entries, we would find they do not fall within the scope of R.C.M. 914 because the record does not demonstrate that those entries were ever in the possession of the United States or that they qualify as a "statement" within the meaning of the rule. *See, e.g., United States v. Carrasco*, 537 F.2d 372 (9th Cir. 1976) ("A statement, unlike notes or a diary, seeks to transmit information from the declarant to the reader."). We also note the defense did not file a motion for appropriate relief under R.C.M. 703(f)(2) after the government denied the defense discovery request to produce the entries.

timeline neither constituted a statement as defined by the rule, nor was it within the possession of the United States.

We will first address whether the timeline qualifies as a statement for purposes of R.C.M. 914. A statement includes:

> [A] written statement made by the witness that is signed or otherwise adopted or approved by the witness; [or a] substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and contained in stenographic, mechanical, electrical, or other recording or a transcription thereof.

R.C.M. 914(f)(1)-(2).

Relying on *Carrasco*, appellant argues the timeline became a statement once DS offered it to CID. 537 F.2d 372. In *Carrasco*, a government informant and key government witness maintained a diary during the week she sold heroin to the accused. *Id.* at 375. The diary consisted of approximately "[ten] handwritten, loose-leaf sized pages" each of which the informant signed or initialed. *Id.* The court held that the diary became a statement once the informant gave it to the Drug Enforcement Agency (DEA). *Id.* The DEA then incorporated the diary into a law enforcement report.

The circumstances in appellant's case are very different from *Carrasco*. First, there is no indication DS signed or adopted the timeline as the informant in *Carrasco* did with her diary notes. *See* R.C.M. 914(f)(1). According to the testimony of DS and MC, the timeline, made years after the alleged dates of appellant's offenses, consisted of informal notes of dates and locations based on a review of Facebook and a calendar. Further, the timeline was not a contemporaneous recording of DS' verbatim oral statement. *See* R.C.M. 914(f)(2). Second, although DS may have intended to offer the timeline to CID, unlike in *Carrasco*, the offer was not accepted. Further, a key distinction from *Carrasco* is that CID never incorporated the timeline into its report. This is an important distinction because in *Carrasco* the informant testified to something that was not contained in the report, but claimed was contained in the diary. *Id.* at 375. Essentially, the exact contents of the diary became a material issue at trial. *Id.* In contrast, neither DS nor any other witness relied on any information contained in the timeline at trial. In sum, the timeline never evolved into a statement as defined by R.C.M. 914.

Although we find the timeline does not qualify as a statement for purposes of R.C.M. 914, we will continue to address whether it was in the possession of the

5

United States. A statement is in the possession of the United States if "'it is in the possession of a federal prosecutorial agency.'" *United States v. Brooks*, 79 M.J. 501, 507 (Army Ct. Crim. App. 2019) (quoting *United States v. Naranjo*, 634 F.3d 1198, 1211-12 (11th Cir. 2011). Appellant agrees that the timeline was never in the physical possession of the United States. Notably, the defense counsel at trial conceded that the timeline was never in the government's possession. However, appellant contends CID had "constructive" possession of the timeline because DS offered the timeline to CID. Under the circumstances of this case, appellant's reliance on the doctrine of constructive possession is misplaced.

The doctrine of constructive possession, as it relates to R.C.M. 914, applies to instances where there is a joint law enforcement investigation between federal and state authorities. The doctrine requires federal prosecutors to disclose *Brady* material in the possession of state prosecutors in instances where the federal and state authorities are conducting a joint investigation. *See, e.g., Naranjo*, 643 F.3d at 1212-13; *see also United States v. Brooks*, 79 M.J. at 508-09 (Army Ct. Crim. App. 2019). Appellant does not cite to any case law, nor is this court aware of any case, that extends the doctrine of constructive possession to a mere interaction between law enforcement and a victim.

As such, we agree with the military judge's ruling that the timeline was never in the possession of the United States.[6]

## CONCLUSION

On consideration of the entire record the findings of guilty and sentence are AFFIRMED.

---

[6] According to DS and MC's testimony, the timeline's focus was on the dates and locations DS and appellant had in-person sexual interactions during family visits. Although we ultimately determine the military judge did not err, negating our need to conduct a prejudice analysis, we pause to discuss the timeline's low probative value. Even without the timeline's physical production, appellant was able to explore the impeachment value of the document's creation. Defense counsel cross-examined witnesses regarding the timeline and argued its creation established MC improperly influenced DS. Specifically, defense counsel argued the timeline was not created to aid DS's memory, but rather it was cobbled together to support false allegations. Considering the defense was able to extensively exploit the impeachment value of the timeline's creation and, in light of the military judge acquitting appellant of in-person indecent liberties against DS, any remaining probative value of the lost details within the non-contemporaneous timeline is extremely low for the defense.

Senior Judge BURTON and Judge RODRIGUEZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court