# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––––––––

## No. ACM 39407

––––––––––––––––––––

### UNITED STATES
*Appellee*

v.

### Humphrey DANIELS, III
Lieutenant Colonel (O-5), U.S. Air Force, *Appellant*

––––––––––––––––––––

Appeal from the United States Air Force Trial Judiciary

Decided 18 June 2019

––––––––––––––––––––

*Military Judge:* L. Martin Powell (arraignment); J. Wesley Moore (motions); Natalie D. Richardson (motions and trial).

*Approved sentence:* Dismissal, confinement for 2 years and 252 days, and a reprimand. Sentence adjudged 14 June 2017 by GCM convened at Joint Base Andrews Naval Air Facility Washington, Maryland.

*For Appellant:* Major Patrick A. Clary, USAF; Major Mark J. Schwartz, USAF; Tami L. Mitchell, Esquire; David P. Sheldon, Esquire.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before HUYGEN, MINK, and LEWIS, *Appellate Military Judges.*

Senior Judge HUYGEN delivered the opinion of the court, in which Judge MINK and Judge LEWIS joined.

––––––––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

––––––––––––––––––––

HUYGEN, Senior Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of one specification of negligent dereliction of duty, one specification of rape, and four specifications of conduct unbecoming an officer and gentleman in violation of Articles 92, 120, and 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 920, 933[1,2] The members adjudged a sentence of a dismissal, confinement for three years, and a reprimand. The convening authority approved 2 years and 252 days of confinement but otherwise approved the sentence as adjudged. The convening authority also deferred the mandatory forfeiture of pay and allowances from the effective date of the forfeiture until the date of action.

Appellant raises through counsel seven assignments of error (AOE): (1) Appellant's conviction for rape (Charge II) must be set aside under *United States v. Mangahas*, 77 M.J. 220 (C.A.A.F. 2018); (2) his convictions for negligent dereliction of duty (Charge I) and conduct unbecoming an officer and gentleman (Charge III) are factually and legally insufficient; (3) Charge III and its specifications fail to state an offense; (4) the military judge erred in admitting a transcript of Appellant's testimony from his criminal trial in civilian court; (5) the trial counsel engaged in prosecutorial misconduct during closing and rebuttal argument; (6) the court-martial panel members failed to comply with the military judge's instructions; and (7) Appellant is entitled to relief under *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), for the delay from the date his trial concluded until the date the convening authority took action. Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant raises an additional seven AOE: (8) his conviction for rape is factually and legally insufficient; (9) his trial defense counsel were ineffective for failing to move to dismiss Charge III and its specifications for failure to state an offense; (10) the Government failed to disclose evidence as required under *Brady v. Maryland*, 373 U.S. 83 (1963); (11) the military judge erred in admitting a "911 phone call" into evidence; (12) the cumulative effect of errors substantially impaired the fairness of Appellant's trial; (13) the reference in the court-martial transcript to Appellant being arraigned by a special court-

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), unless indicated otherwise. The version of Article 120, UCMJ, at issue in Appellant's case is found in the 1998 *MCM*.

[2] The members found Appellant not guilty of one specification of conduct unbecoming an officer and gentleman in violation of Article 133, UCMJ (Specification 4 of Charge III).

martial means that the general court-martial that tried him lacked jurisdiction or his sentence to confinement and a dismissal is unlawful; and (14) the staff judge advocate (SJA) misadvised the convening authority that the maximum punishment in Appellant's case was death.

We address below AOE (1), (2), (3), and (7). AOE (8) is rendered moot by our resolution of AOE (1). We have considered AOE (4)–(6) and (9)–(14); they warrant no further discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). We find prejudicial error with regard to AOE (1) and set aside Appellant's conviction for rape and the sentence. We also set aside the finding of guilty for Specification 2 of Charge III (conduct unbecoming an officer and gentleman).

## I. BACKGROUND

In November 2014, Appellant and Major (Maj) DU ended their romantic relationship. On or about 5 December 2014, Maj DU contacted the Fairfax County (Virginia) Police Department (FCPD) and reported that Appellant was "stalking" her.[3] FCPD Detective EM, the lead investigator of Maj DU's allegation against Appellant, had cameras set up outside Maj DU's house. On the night of 9 December 2014, the cameras photographed Appellant in the house's fenced-in backyard.

On the morning of 16 December 2014, Maj DU was driving in her neighborhood and called "911" from her car to report that Appellant was following her in his car. Detective EM had a warrant issued for Appellant's arrest and contacted Appellant's chain of command at Joint Base Andrews Naval Air Facility Washington, Maryland. When Appellant arrived at the base's main gate, security forces detained him. After Appellant's first sergeant came to the gate and talked with him, Appellant agreed to have the first sergeant drive him to an FCPD station in Alexandria, Virginia.

Appellant arrived at the FCPD station around 1400 hours, and Detective EM placed him under arrest. After escorting Appellant to an interview room, Detective EM advised him of his rights, which he acknowledged before he agreed to answer questions. Detective EM and another FCPD detective interviewed Appellant for the next couple of hours. Appellant's answers to their questions formed the basis of four of the five specifications of conduct unbe-

---

[3] In 2015, Appellant was convicted in Fairfax County circuit court of misdemeanor stalking.

coming an officer and gentleman with which Appellant was charged and tried at court-martial.

On 17 December 2014, Detective EM and other FCPD personnel conducted a search of Appellant's off-base residence. During the search, FCPD personnel found documents indicating they contained classified information and contacted the Air Force Office of Special Investigations (AFOSI). Several days after the search, AFOSI agents went to Appellant's apartment and seized the documents, which became the subject of the single specification of negligent dereliction of duty with which Appellant was charged and tried at court-martial.

On 18 December 2014, Appellant called his friend, SM, from the Fairfax County Detention Center and asked her to call his supervisor, Colonel (Col) KB, and request 10 days of emergency leave so that Appellant could take care of a "personal" and "medical" situation. SM wanted to include Appellant in a three-way call but was unable to do so. She was able to contact Appellant's office and submit his leave request, which Col KB denied. Appellant's request for SM to contact Col KB formed the basis of the fifth specification of conduct unbecoming an officer and gentleman with which Appellant was charged and tried at court-martial.

During Detective EM's investigation of the stalking allegation, AFOSI provided a 1998 report of an investigation by AFOSI and Minot (North Dakota) police into an allegation by TS that Appellant raped her on or about 14 July 1998. In September 1998, TS declined to participate in the investigation, which was then closed with no action. In 2015, Detective EM contacted TS, who agreed to go forward with the original rape allegation, which became the single specification of rape with which Appellant was charged and tried at court-martial.

## II. DISCUSSION

### A. Statute of Limitations

Appellant asserts that, because the statute of limitations had run, his conviction for a rape in 1998 must be set aside under *United States v. Mangahas*, 77 M.J. 220 (C.A.A.F. 2018). We agree.

Prior to the findings portion of Appellant's trial, the Defense moved for the dismissal of the rape charge on two bases: that the Government had violated Appellant's right to a speedy trial and that the five-year statute of limi-

tations set by Article 43, UCMJ, 10 U.S.C. § 843,[4] had tolled. The Government opposed the motion and, with regard to the statute of limitations, cited precedent, including *Willenbring v. Neurater*, 48 M.J. 152 (C.A.A.F. 1998).[5]

"The applicable statute of limitations is a question of law, which we review de novo. An accused is subject to the statute of limitations in force at the time of the offense." *Mangahas*, 77 M.J. at 222 (citations omitted). At the time of the charged rape that allegedly occurred in 1998, the UCMJ's statute of limitations stated, "A person charged . . . with any offense punishable by death, may be tried and punished at any time without limitation." Article 43(a), UCMJ, 10 U.S.C. § 843(a). Otherwise, the statute of limitations for trial by court-martial was generally five years before the receipt of sworn charges. Article 43(b)(1), UCMJ, 10 U.S.C. § 834(b)(1). The 1998 *Manual for Courts-Martial* set death as the maximum punishment for rape. *Manual for Courts-Martial*, *United States* (1998 ed.), pt. IV, ¶ 45.e.(1).

As the court clearly and concisely explained in *United States v. Collins*, 78 M.J. 530, 532–33 (A.F. Ct. Crim. App. 2018), *aff'd*, __ M.J. __, No. 19-0052, 2019 CAAF LEXIS 231, at *1 (C.A.A.F. 12 Mar. 2019), *Mangahas* overruled *Willenbring* and operates to apply a five-year statute of limitations to a rape that is charged as occurring before 2006, when the limitation was lifted. *See* Article 43(a), UCMJ, 10 U.S.C. § 843(a).[6] The result in Appellant's case is that time expired on the 1998 rape charge in 2003, 13 years before Appellant was charged and three years before Article 43, UCMJ, was amended. Because we apply the law at the time of appeal, not at the time of trial, *United States v. Mullins*, 69 M.J. 113, 116 (C.A.A.F. 2010) (citation omitted), we find that the military judge erred by denying the Defense's motion to dismiss Charge II and its Specification. The statute of limitations had run by the time Appel-

---

[4] The version of Article 43, UCMJ, at issue in Appellant's case is found in the 1998 *MCM*.

[5] The military judge who presided during motions practice on 1 December 2016 heard oral argument on the Defense motion to dismiss and then indicated he would make a written ruling. There is no written or oral ruling on the motion in the record of trial, but there is also no mention of a "missing" ruling by either party at trial or on appeal. In addition, all the appellate exhibits offered and admitted at trial are in the record. The application of *Mangahas* resolves the issue of the statute of limitations in Appellant's case and requires us to set aside his rape conviction. As a result, we need not address the absence of a ruling on the motion.

[6] The version of Article 43, UCMJ, as changed in 2006 is found in the 2008 *MCM*.

lant was charged in 2016 with committing rape in 1998.[7] Therefore, we set aside Appellant's conviction for rape and the sentence.

Because we set aside the findings of guilty of rape and the sentence and dismiss with prejudice Charge II and its Specification, we consider whether to reassess a sentence or order a rehearing. *See United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). We are setting aside the most serious charge of which Appellant was convicted. As a result, the penalty landscape has changed dramatically, particularly regarding the maximum possible confinement that was confinement for life and is now 15 months,[8] and the remaining offenses—negligent dereliction of duty and conduct unbecoming an officer and gentleman—do not capture the gravamen of criminal conduct of the original charges. *See id.* at 15–16 (citations omitted). We thus exercise our broad discretion and authorize a rehearing on sentence. *See id.* at 12.

## B. Legal and Factual Sufficiency

Appellant next contends that his convictions of negligent dereliction of duty (Charge I and its Specification) and conduct unbecoming an officer and gentleman (Charge III and its Specifications 1, 2, 3, and 5) are factually and legally insufficient. We disagree except for, in part, the Specification of Charge I and, in toto, Specification 2 of Charge III.

### 1. Law

We review issues of legal and factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted). The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

---

[7] As the court did in *Collins*, we acknowledge the "unresolved question" of whether the 2006 amendment of Article 43, UCMJ, extended the statute of limitations for rape occurring between 2001 and 2006. 78 M.J. at 536. But, as in Collins' case, it is unnecessary for us to answer the question in Appellant's case because the five-year statute of limitations on the 1998 rape had run before the 2006 amendment. *See id.*

[8] The military judge merged Specifications 1, 2, 3, and 5 of Charge III, of which Appellant was found guilty, and the members were instructed to consider them as one offense for sentencing purposes.

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Id.* at 325. "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

In order for Appellant to be found guilty as charged of negligent dereliction of duty under Article 92, UCMJ, the Government was required to prove beyond a reasonable doubt that (1) Appellant had a duty to protect classified information; (2) he reasonably should have known of the duty; and (3) at or near Camp Springs, Maryland, on or about 17 December 2014, he was, through neglect, derelict in the performance of the duty by taking classified materials to his residence and leaving them unattended. *See Manual for Courts-Martial*, *United States*, pt. IV, ¶ 16.b.(3) (2016 ed.) (*MCM*). A duty may be imposed by, *inter alia*, regulation. *Id*. ¶ 16.c.(3)(a). "Actual knowledge of duties may be proved by circumstantial evidence. Actual knowledge need not be shown if the individual reasonably should have known of the duties. This may be demonstrated by[, *inter alia*,] regulations [or] training . . . ." *Id*. ¶ 16.c.(3)(b). "'Negligently' means an act or omission of a person who is under a duty to use due care which exhibits a lack of that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances." *Id*. ¶ 16.c.(3)(c).

In order for Appellant to be found guilty as charged of conduct unbecoming an officer and gentleman under Article 133, UCMJ, the Government was required to prove beyond a reasonable doubt that (1) Appellant did a certain act and (2) under the circumstances, the act constituted conduct unbecoming an officer and gentleman. *See MCM*, pt. IV, ¶ 59.b.

The "certain act" charged in Specification 1 of Charge III (and instructed by the military judge) was that (a) at or near Alexandria, Virginia, on or about 16 December 2014, Appellant misled FCPD detectives by falsely claiming he did not go into the backyard of Maj DU's residence, on or about 9 December 2014; (b) he "did so in the case of himself against whom [he] had reason to believe there were or would be criminal proceedings pending;" and (c) he did so with the intent to impede the due administration of justice. The "certain act" charged in Specification 2 was that, at or near Alexandria, Virginia, on or about 16 December 2014, Appellant misled FCPD detectives by falsely claiming he could not provide his official email address to the detec-

tives under the same circumstances charged in Specification 1. The "certain act" charged in Specification 3 was that, at or near Alexandria, Virginia, on or about 16 December 2014, Appellant misled FCPD detectives by falsely claiming he was not in Maj DU's neighborhood on 16 December 2014 under the same circumstances charged in Specification 1. The "certain act" charged in Specification 5 was that, at or near Alexandria, Virginia, on or about 18 December 2014, Appellant asked SM to misrepresent to Col KB the basis of Appellant's request that he be placed in an emergency leave status. Conduct in violation of Article 133, UCMJ, is, *inter alia*, action "in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer. There are certain moral attributes common to the ideal officer and the perfect gentleman, a lack of which is indicated by acts of[, *inter alia*,] dishonesty . . . ." *Id*. ¶ 59.c.(2).

### 2. Analysis

At the outset, we declare legally and factually sufficient Specifications 1, 3, and 5 of Charge III. For Specifications 1 and 3, the Government proved beyond a reasonable doubt the falsity of Appellant's claims that he was not in Maj DU's backyard on 9 December 2014 and not in her neighborhood on 16 December 2014. Moreover, Appellant made these false claims after being detained on his way in to work by Air Force personnel at the request of Fairfax County authorities and then placed under arrest and advised of his rights by FCPD detectives. While wearing his Air Force uniform, he agreed to answer questions from FCPD detectives who knew that he was an Air Force officer and that his claims were false when he made them with the obvious intent to impede the investigation of the stalking allegation against him. For Specification 5, the Government proved beyond a reasonable doubt that Appellant asked SM to "misrepresent" to Col KB the basis for Appellant's emergency leave request and hide the fact that Appellant was in jail. Considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements of Specifications 1, 3, and 5 of Charge III beyond a reasonable doubt and been convinced that Appellant committed the charged acts, that his conduct was unbecoming an officer and gentleman, and that he was guilty beyond a reasonable doubt. After weighing the evidence in the record and making allowances for not having personally observed the witnesses, we are so convinced.

Conversely, we determine legally and factually insufficient particular language of the Specification of Charge I, which alleged that Appellant was negligently derelict in his duty to protect classified information by "taking classified materials to his residence and leaving said materials unattended" on or about 17 December 2014. The Government presented no evidence that Appellant took the classified materials found *at* his residence on 17 December

2014 *to* his residence on or about that date. However, the Government did prove beyond a reasonable doubt that, on or about 17 December 2014, Appellant left the classified materials unattended at his residence when he left his residence on the morning of 16 December 2014. We therefore except from the Specification of Charge I the language (1) "taking classified materials to," (2) the "and" before "leaving," and (3) "said" and set aside the finding of guilty of the excepted language. We substitute "at" for "to" and "classified" for "said" and find legally and factually sufficient the finding of guilty of the substituted language.[9]

We also determine factually insufficient Specification 2 of Charge III. Taking a fresh, impartial look at the evidence, we are convinced of the falsity of Appellant's claim that he could not provide his official email address to the FCPD detectives interviewing him. However, we are not convinced that he made the false claim endeavoring to impede the investigation of the stalking allegation against him. Instead, we find it clear from the evidence (and the briefs of both parties on appeal) that Appellant's intent was to hide from his chain of command and supervision the fact that he was under criminal investigation and under arrest. As a result, we set aside the finding of guilty of Specification 2 of Charge III.

### C. Failure to State an Offense

Appellant also challenges Charge III and its specifications, of which Specifications 1, 3, and 5 remain, for failure to state an offense. We are not persuaded.

#### 1. Law

Whether a specification states an offense is a question of law we review de novo. *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006) (citations omitted). We also consider Appellant's failure to object at trial and review for plain error. *United States v. Tunstall*, 72 M.J. 191, 196 (C.A.A.F. 2013). To establish plain error, an appellant has the burden to demonstrate (1) error, (2) that the error was plain or obvious, and (3) that the error materially prejudiced a substantial right of the appellant. *Id.* (citation omitted).

There are only two elements for the offense of conduct unbecoming an officer and gentleman under Article 133, UCMJ: (1) an act of the accused and (2) that, under the circumstances, the act constituted conduct unbecoming an

---

[9] With excepted and substituted language, the specification reads, in relevant part, that Appellant was, through neglect, derelict in the performance of his duty by "at his residence leaving classified materials unattended."

officer and gentleman. *MCM*, pt. IV, ¶ 59.b. "This article includes acts made punishable by any other article, provided these acts amount to conduct unbecoming an officer and a gentleman." *Id.* ¶ 59.c.(2). Using an example of stealing property in violation of Articles 121 and 133, UCMJ, the *MCM* explains:

> Whenever the offense charged is the same as a specific offense set forth in this Manual, the elements of proof are the same as those set forth in the paragraph which treats that specific offense, with the additional requirement that the act or omission constitutes conduct unbecoming an officer and gentleman.

*Id.*

### 2. Analysis

At trial, the Defense did not move for dismissal of any charge or specification for failure to state an offense pursuant to Rule for Courts-Martial 907(b)(2)(E) or object to the military judge's instructions to the court members on the elements of the Charge III offenses.

### a. Specifications 1 and 3 of Charge III

Appellant argues on appeal that it was plain or obvious error for Specifications 1 and 3 of Charge III to fail to allege Appellant's conduct was prejudicial to good order and discipline or service-discrediting. The argument is based on a reading of Specifications 1 and 3 as charges for obstructing justice. Obstructing justice is a specified offense under Article 134, UCMJ. Conduct constitutes obstructing justice if the conduct at issue satisfies all four elements of the offense, including the "terminal element" of conduct prejudicial to good order and discipline or service-discrediting. *MCM,* pt. *IV,* ¶ 96.b.(4). Appellant's argument is understandable not least because of the military judge's instructions on the elements of Specifications 1 and 3 of Charge III for conduct unbecoming an officer and gentleman in violation of Article 133, UCMJ. As the military judge instructed, the elements were that Appellant wrongfully misled FCPD detectives by making false claims; he "did so in the case of himself against whom [he] had reason to believe there were or would be criminal proceedings pending;" he did so "with the intent to impede the due administration of justice;" and his conduct was unbecoming an officer and gentleman. Except for the fourth and final element—"conduct unbecoming" instead of the terminal element—the elements as instructed were identical to the elements for obstructing justice.

Nonetheless, Appellant's argument fails. Not only did the Defense at trial not object to the elements of Specifications 1 and 3, but it employed a deliber-

ate strategy to treat Specifications 1 and 3 (and 2 and 4) as "general Article 133 violation[s]" and not charges of obstructing justice in order to limit Appellant's confinement risk.[10] The strategy ultimately operated to Appellant's distinct benefit when the military judge merged all four of the Article 133, UCMJ, specifications of which Appellant was found guilty and instructed the members to consider them as one offense for sentencing purposes. Even if we were to assume *arguendo* that the omission of the terminal element from Specifications 1 and 3 was error, the error was not plain or obvious, and, even if it was, it did not materially prejudice a substantial right of Appellant. *See Tunstall*, 72 M.J. at 196.

### b. Specification 5 of Charge III

Appellant also argues on appeal that Specification 5 of Charge III fails to state an offense "because it is vague, lacks words of criminality," and did not put Appellant on notice "that it was a crime to ask his civilian friend to call his supervisor to inform his supervisor Appellant was requesting emergency leave." We are unpersuaded and instead find that Specification 5 did state an offense.

> An officer's conduct need not violate other provisions of the UCMJ or even be otherwise criminal to violate Article 133, UCMJ. The gravamen of the offense is that the officer's conduct disgraces him personally . . . . Clearly, then, the appropriate standard for assessing criminality under Article 133 is whether the conduct or act charged is dishonorable and compromising as hereinbefore spelled out -- this notwithstanding whether or not the act otherwise amounts to a crime.

*United States v. Lofton*, 69 M.J. 386, 388–89 (C.A.A.F. 2011) (quoting *United States v. Schweitzer*, 68 M.J. 133, 137 (C.A.A.F. 2009)). Applying *Schweitzer*, we determine that Specification 5 put Appellant on notice that his conduct was criminal. But the crime at issue was not, as Appellant now contends, to "ask a civilian friend to call his supervisor to request 'emergency leave'" on Appellant's behalf. Instead, Appellant was charged with and convicted of conduct unbecoming an officer and gentleman because he asked SM to *mis-*

---

[10] Obstructing justice in violation of Article 134, UCMJ, has a maximum punishment including confinement for five years. *MCM*, pt. IV, ¶ 96.e. Conduct unbecoming an officer and gentleman in violation of Article 133, UCMJ, has a maximum punishment including confinement "for a period not in excess of that authorized for the most analogous offense for which a punishment is prescribed in this Manual, or, if none is prescribed, for 1 year." *Id*. ¶ 59.e.

*represent* to Col KB the basis for his emergency-leave request as a "personal" and "medical" situation instead of what it actually was: arrest and detention by civilian authorities for a criminal charge. Correspondingly, the specification was not vague and did not lack words of criminality. As with Specifications 1 and 3, we review Specification 5 for plain error and find none.

## D. Post-Trial Processing Delay

Appellant claims that he is entitled to relief for the delay from the date his trial concluded until the date the convening authority took action. While we find that the delay in the post-trial processing of his court-martial was unreasonable, we grant no further relief than Appellant has already received.

We review de novo whether an appellant has been denied the due process right to a speedy post-trial review. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). A presumption of unreasonable delay arises when the convening authority does not take action within 120 days of the end of trial. *Id.* at 142. A presumptively unreasonable delay triggers an analysis of the four factors laid out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted).

Appellant's trial ended on 14 June 2017. The convening authority took action on 2 February 2018, 233 days after the end of trial and 113 days beyond the 120-day standard.

Appellant's trial took place on 20 September 2016, 1 December 2016, 5–9 June 2017, and 12–14 June 2017 and required a 1,123-page trial transcript and 12 volumes, including a classified volume. Except for the classified volume, Appellant received a copy of the record of trial on 10 October 2017. The staff judge advocate's recommendation (SJAR) is dated 25 September 2017; the SJAR addendum with the victim's statement is dated 12 October 2017. Appellant requested and was granted delays to submit clemency matters until 6 November 2017, 6 December 2017, and 11 December 2017. His seven-volume, 1,400-page clemency matters are dated 7 December 2017. However, they were not all submitted by that date, and, at some point after 9 December 2017, Appellant's original military defense counsel was replaced by a new military defense counsel. On 5 January 2018, Appellant indicated his clemency submission was complete. The second addendum to the SJAR with Appellant's clemency submission is dated 11 January 2018. The SJAR and both addenda recommended that the convening authority approve the sentence as adjudged.

Appellant cited the post-trial processing delay in his clemency submission dated 7 December 2017 and asserted his right to speedy post-trial processing on 17 January 2018.[11]

Appellant claims to have suffered prejudice in the form of oppressive incarceration and excessive anxiety related to his purportedly wrongful convictions for rape, conduct unbecoming an officer and gentleman, and negligent dereliction of duty. *See Moreno*, 63 M.J. at 138 (citations omitted). But we note, as the Government points out, that *Mangahas* is the basis of Appellant's most significant relief—the set-aside of his rape conviction and sentence—and the case was not decided until 6 February 2018, or four days after the convening authority took action in his case.

We weigh the *Barker* factors and conclude that Appellant is entitled to relief for the presumptively unreasonable 113-day delay in the post-trial processing of his case. The sentence adjudged by the court members included three years of confinement. The convening authority approved a sentence including two years and 252 days of confinement. While there is no explanation in the record for the difference in confinement between the adjudged and approved sentences, we do not chalk up to mere coincidence the fact that the convening authority reduced the confinement by exactly 113 days. But, even if the precise measure of relief was purely coincidental, we find that it satisfies Appellant's entitlement. We decline to grant further relief pursuant to *Moreno* or any other discretionary authority we may exercise. *See United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002); *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

### III. CONCLUSION

The findings of guilt of Charge II and its Specification and of Specification 2 of Charge III are **SET ASIDE** and Charge II and its Specification and Specification 2 of Charge III are **DISMISSED WITH PREJUDICE**. The sentence is **SET ASIDE**. The finding of guilt of the excepted language of the

---

[11] Appellant has twice moved the court for an expedited review of his case, and the court has treated both motions as demands for speedy appellate review. This opinion is being issued two months before the 18-month standard for a presumptively unreasonable delay in appellate review set in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Appellant also petitioned the United States Court of Appeals for the Armed Forces for a writ of habeas corpus, which petition was denied, but did not file any such petition with us. *See Daniels v. Brobst*, ___ M.J. ___, No. 19-0223, 2019 CAAF LEXIS 215 (C.A.A.F. 2 Apr. 2019) (mem.).

Specification of Charge I is also **SET ASIDE**. The case is returned to The Judge Advocate General for further processing consistent with this opinion.[12] A rehearing on sentence is authorized. Article 66(e), UCMJ, 10 U.S.C. § 866(e).

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[12] We direct a corrected court-martial order to remedy the following errors: (1) none of the specifications include "United States Air Force" after Appellant's name; (2) the Specification of Charge II lists the wrong date of the charged offense; (3) Specification 1 of Charge III is missing the word "falsely" before "claiming"; and (4) Specification 5 of Charge III lists the wrong date of the charged offense and does not reflect the minor change to the spelling of SM's last name that the military judge allowed the Government to make. Yet again, we are dismayed at the lack of attention to detail in court-martial processing and compelled to remind Air Force personnel to exercise care in the execution of their duties.