# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40605**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Caleb H. RYDER**
Airman (E-2), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 25 June 2025

———————————

*Military Judge*: Charles G. Warren; Tyler B. Musselman (post-trial).

*Sentence*: Sentence adjudged 26 April 2023 by GCM convened at Barksdale Air Force Base, Louisiana. Sentence entered by military judge on 11 August 2025: Dishonorable discharge, confinement for 345 days, reduction to E-1, and a reprimand.

*For Appellant*: Major Jordan L. Grande, USAF; Major Trevor N. Ward, USAF.

*For Appellee*: Lieutenant Colonel G. Matt Osborn, USAF; Maj Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, MASON, and KEARLEY, *Appellate Military Judges*.

Judge KEARLEY delivered the opinion of the court, in which Chief Judge JOHNSON and Judge MASON joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

KEARLEY, Judge:

A general court-martial composed of a military judge convicted Appellant, in accordance with his pleas, of one charge and one specification of abusive

sexual contact without consent, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920, and one charge and one specification of wrongful possession of child pornography, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1] Pursuant to a plea agreement, one specification of soliciting a visual depiction of an actual minor engaged in sexually explicit conduct, in violation of Article 134, UCMJ, was dismissed with prejudice. The military judge sentenced Appellant to a dishonorable discharge, confinement for 345 days, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings or sentence.

Appellant raises two issues on appeal which we have rephrased: (1) whether the military judge abused his discretion in accepting Appellant's guilty plea to abusive sexual contact without consent in light of *United States v. Mendoza*, 85 M.J. 213 (C.A.A.F. 2024), because he failed to establish the named victim was capable of consenting prior to determining that she did not consent; and (2) whether the Government's 369-day post-trial delay entitles Appellant to appropriate relief.

In light of *Mendoza*, we find Appellant's plea to abusive sexual contact without consent was improvident. We have carefully considered but decline to address issue (2) related to the Government's post-trial delay at this time. We set aside the findings and sentence related to Appellant's conviction for abusive sexual contact without consent and remand to the Judge Advocate General for further proceedings consistent with this opinion.

# I. BACKGROUND

On 12 November 2022, Appellant went to dinner with a group of friends, including ML.[2] Later that evening, Appellant and ML went to ML's home. ML shared a house with NA. The group spent time together that evening, then all went to bed in separate rooms. Appellant went to sleep on the couch and NA went to sleep in her bedroom. Appellant woke up multiple times that night and eventually went to NA's bedroom. He found NA asleep in her bed and decided to lay down on a beanbag chair next to it.

Appellant believed NA was asleep. He raised his arm onto the bed, felt NA's leg, and moved his hand from her leg up to her buttocks. When he touched her buttocks, he believed she was still asleep. He then moved his hand further up to the small of NA's back. At point, NA moved as though she had awoken

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] ML was an active duty male servicemember from another armed force at the time of Appellant's offenses.

and Appellant removed his hand. NA texted her roommate, ML, and asked him to come downstairs and help. ML came downstairs, saw Appellant laying by NA's bed, and asked him to leave. Appellant left and went to his car. A few weeks later, Appellant provided a statement to Air Force Office of Special Investigations (OSI). In this statement, he described his touching of NA's buttocks as "grabbing [her] a[**] with [his] hand," and admitted that "she never consented to it."

Over the course of the investigation into Appellant's actions regarding NA, Appellant disclosed to OSI that he possessed nude photos of underaged children. OSI seized Appellant's phone and confirmed the presence of child pornography or what appeared to be child pornography. In total, Appellant possessed more than 50 files of child pornography in either a folder or on a social media application on his phone.

## II. DISCUSSION

Appellant claims that his guilty plea to abusive sexual contact without consent was improvident because the military judge failed to establish NA was capable of consenting prior to determining she did not consent, in light of *Mendoza*. As such, Appellant asks this court to find his guilty plea to abusive sexual contact without consent to be improvident. We agree.

### A. Additional Background

Appellant and the Government agreed to a stipulation of fact that was presented to the military judge. The stipulation stated, "Late the next morning, [Appellant] woke up and began to touch the thighs and buttocks of [NA] while she was asleep in her own bed."

During the providence inquiry for the charge of abusive sexual contact without consent, the military judge informed Appellant of the following:

> [Military Judge (MJ)]: In this case, it is alleged that you did this touching without consent. The legal definition for consent is as follows: "Consent" means a freely given agreement to the conduct at issue by a competent person.
>
> A "competent person" is a person who possesses the physical and mental ability to consent. By operation of law, a sleeping person cannot consent.
>
> . . . .
>
> MJ: Now, "freely given agreement" means that a person first possesses the cognitive ability to appreciate the nature of the conduct in question, and then possesses the mental and physical

ability to make and to communicate a decision regarding the conduct to the other person.

Appellant explained to the military judge that he believed NA was asleep when he raised his arm onto the bed, felt NA's leg, and moved his hand from her leg up to her buttocks. During the providence inquiry Appellant told the military judge that after he touched NA's buttocks, he moved his hand "up to the small of her back." Appellant went on to say:

> Once I touched the small of her back, she moved, and I instantly knew the wrongfulness of what I had done. I knew as I had touched her butt, that she was asleep. As she moved once, I touched her back, and after she moved, I instantly took my hand away, because I knew what I did was wrong, because she did not consent to my touching.

In response to Appellant's description of his non-consensual touching of NA, the military judge asked clarifying questions regarding Appellant's contemporaneous assessment of NA's condition:

> MJ: . . . Just to clarify a few facts with you, so as I told you earlier, a sleeping person cannot consent. If I understand your guilty plea inquiry correctly, it sounded like you were saying that you believed her to be asleep when you started touching her leg. Is that right?
>
> [Appellant]: Yes, Your Honor.
>
> MJ: Okay. And what led you to believe that?
>
> . . . .
>
> [Appellant]: Your Honor, [NA] was in her room, in her bed, lying still, not moving. That's what led me to believe that.
>
> . . . .
>
> MJ: . . . So as far as you understood, she was asleep throughout the touching of her leg and buttocks?
>
> [Appellant]: Yes, Your Honor.
>
> MJ: Okay. And you continued to touch her until she woke up, and then, when she woke up, you said you realized it was wrong[,] and you quit touching her at that point?
>
> [Appellant]: Yes, Your Honor.

At the end of the guilty plea inquiry, the military judge found Appellant's guilty pleas provident and found Appellant guilty in accordance with his pleas.

NA gave her version of events in a victim impact statement provided to the military judge in written form during the presentencing proceedings. In that letter, NA stated,

> [Appellant] disregarded my dignity and definitely did not have any restraint the night he decided to inappropriately touch me, a sleeping, defenseless woman. Waking up scared and unsure of how he may react if he knew I was awake, I still tried to protect myself by texting my roommate for help. [Appellant] did not stop until my roommate came downstairs and confronted him.

**B. Law**

Article 45(a), UCMJ, 10 U.S.C. § 845(a), requires military judges to reject a plea of guilty "if it appears that [an accused] has entered the plea of guilty improvidently." "To prevent the acceptance of improvident pleas, [the United States Court of Appeals for the Armed Forces] has long placed a duty on the military judge to establish, on the record, the factual bases that establish that 'the acts or omissions of the accused constitute the offense or offenses to which he is pleading guilty.'" *United States v. Nance*, 67 M.J. 362, 365 (C.A.A.F. 2009) (quoting *United States v. Care*, 40 C.M.R. 247, 253 (C.M.A. 1969) (establishing the requirement for an on the record "*Care*" inquiry in guilty plea cases)). Crucially, "[i]f the military judge fails to establish there is an adequate basis in law and fact to support the accused's plea during the *Care* inquiry, the plea will be improvident." *Id.* (citations omitted).

"[W]e review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). "In doing so, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Id.*; *see also United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004) ("[I]n evaluating the providency of a plea, the entire record should be considered."). An appellant bears the burden of establishing the military judge abused his discretion in accepting a guilty plea. *United States v. Phillips*, 74 M.J. 20, 21–22 (C.A.A.F. 2015).

> In order to ensure a provident plea, the military judge must "accurately inform [the a]ppellant of the nature of his offense and elicit from him a factual basis to support his plea." "An essential aspect of informing Appellant of the nature of the offense is a correct definition of legal concepts. The judge's failure to do so may render the plea improvident." However, "an error in advising an accused does not always render a guilty plea improvident. Where the record contains factual circumstances that objectively

> support the guilty plea to a more narrowly construed statute or legal principle, the guilty plea may be accepted."

*United States v. Finch*, 73 M.J. 144, 148 (C.A.A.F. 2014) (quoting *Negron*, 60 M.J. at 141).

"The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citation omitted). "[A]n accused has a right to know to what offense and under what legal theory he or she is pleading guilty." *Id.*

This court examines "the totality of the circumstances of the providence inquiry, including the stipulation of fact, as well as the relationship between the accused's responses to the leading questions and the full range of the accused's responses during the plea inquiry." *Nance*, 67 M.J. at 366 (citation omitted).

In assessing the providence on a guilty plea, we consider an appellant's "colloquy with the military judge, as well any inferences that may reasonably be drawn" from it. *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007) (citation omitted). Generally, appellate courts accept the parties' trial-level stipulated facts as true. *See United States v. Castro*, 81 M.J. 209, 211–12 (C.A.A.F. 2021).

Article 120(d), UCMJ, 10 U.S.C. § 920(d), criminalizes abusive sexual contact and defines multiple ways in which the Government may prove the offense. *See Manual for Courts-Martial, United States*, (2019 ed.) (*MCM*), pt. IV, ¶ 60.b.(4). Relevant to this case, the UCMJ provides that the offense of abusive sexual contact can be committed *inter alia* "[w]ithout consent," upon "a person who is asleep, unconscious, or otherwise unaware the contact is occurring," or "[w]hen the other person is incapable of consenting." *MCM*, pt. IV, ¶ 60.b.(4)(d)–(f).

Before accepting a guilty plea for the offense of abusive sexual contact without consent against NA, as charged, the military judge had to be satisfied that the following elements were met: (1) that Appellant committed sexual contact upon NA; and (2) that Appellant did so without NA's consent. *MCM*, pt. IV, ¶ 60.b.(4)(d).

Relevant to this case, "'sexual contact' means touching or causing another person to touch, either directly or through the clothing, the . . . buttocks of any person, with the intent to . . . arouse or gratify the sexual desire of any person." *MCM*, pt. IV, ¶ 60.a.(g)(2).

"'[C]onsent' means a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct

means there is no consent." *MCM*, pt. IV, ¶ 60.a.(g)(7)(A). "A sleeping . . . person cannot consent." *MCM*, pt. IV, ¶ 60.a.(g)(7)(B). "All the surrounding circumstances are to be considered in determining whether a person gave consent." *MCM*, pt. IV, ¶ 60.a.(g)(7)(C). "The burden is on the actor to obtain consent rather than the victim to manifest a lack of consent." *United States v. McDonald*, 78 M.J. 376, 381 (C.A.A.F. 2019); *cf. United States v. Rodela*, 82 M.J. 521, 529 (A.F. Ct. Crim. App. 2021) (finding evidence did not support "a reasonable belief that consent has been obtained (or given)").

Our superior court's recent decision in *Mendoza* held that "the Government cannot charge one offense under one factual theory and then argue a different offense and a different factual theory at trial" without violating Appellant's constitutional rights, as "[d]oing so robs the [appellant] of his constitutional 'right to know what offense and under what legal theory he will be tried and convicted.'" 85 M.J. at 220 (citation omitted) (quoting *United States v. Riggins*, 75 M.J. 78, 83 (C.A.A.F. 2016)). Accordingly, to convict under a lack of consent theory without violating an accused's constitutional rights, the Government is required to prove that the victim is capable of consenting but did not consent and cannot rely on showing that the victim was too intoxicated to consent or that the victim was asleep. *See id.* 221–22.

This court has recently applied the holding in *Mendoza* to find an appellant's conviction for sexual assault factually insufficient when the appellant was charged with sexual assault without consent, but the evidence did not prove the named victim was capable of consenting. *United States v. Hennessy*, No. ACM 40439, 2024 CCA LEXIS 503 (A.F. Ct. Crim. App. 25 Nov. 2024) (unpub. op.), *cert. filed*, __ M.J. __, 2025 CAAF LEXIS 183 (C.A.A.F. 11 Mar. 2025); *see also United States v. Moore*, No. ACM 40442 (f rev), 2024 CCA LEXIS 485 (A.F. Ct. Crim. App. 13 Nov. 2024) (unpub. op.) (holding appellant's conviction for sexual assault legally and factually insufficient because the Government charged appellant under one factual theory (sexual assault without consent) but proved the case under a different factual theory (sexual assault when the victim is asleep)), *cert. filed*, __ M.J. __, 2025 CAAF LEXIS 178 (C.A.A.F. 7 Mar. 2025).

"[O]n direct review, we apply the clear law at the time of appeal, not the time of trial." *United States v. Mullins*, 69 M.J. 113, 116 (C.A.A.F. 2010) (citing *United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008)).

**C. Analysis**

**1. Application of *United States v. Mendoza***

In order to review Appellant's claim, we must determine how *Mendoza* applies to a providence inquiry in a guilty plea. Relevant to this case, *Mendoza* has two significant holdings. First, when charging an offense involving consent

to sexual assault or abusive sexual contact, the "without consent" theory is a separate theory of liability from the "sleeping person" theory. *Mendoza*, 85 M.J. at 220. Second, in order to find an Appellant guilty under the "without consent" theory, a factfinder must determine that the named victim was capable of consenting, before finding she did not consent. *Id.* This court sees no reason these holdings would not apply to cases involving a guilty plea.

Although *Mendoza* was decided by our superior court in October 2024, and Appellant's court-martial took place in April 2023, the holdings still apply to Appellant's case while it is under direct review at this court. *See Mullins*, 69 M.J. at 116 (holding that during a direct review, the appellate courts apply the clear law at the time of appeal, not the time of trial).

**2. Providency of the Plea**

To accept Appellant's plea as provident, the military judge must "accurately inform" Appellant of the "nature of his offense," which would include correct definition of legal concepts and "elicit from him a factual basis to support his plea." *Finch*, 73 M.J. at 148. Additionally, the military judge must be convinced that the Appellant understands how the law relates to the facts. *Medina*, 66 M.J. at 26. Applying the CAAF's holding in *Mendoza*, the military judge was required to first establish that NA *was capable of consenting* before accepting Appellant's plea that she did not consent. *Mendoza*, 85 M.J. at 220. Here, although the military judge conducted a thorough inquiry into the facts, there was no discussion as to whether NA was actually awake and able to consent when Appellant touched her buttocks. In fact, the stipulation of fact specifically indicated that Appellant "began to touch the thighs and buttocks of NA *while she was asleep* in her own bed." (Emphasis added). Furthermore, Appellant relayed to the military judge that he believed he was guilty of the offense because NA was sleeping when Appellant touched her buttocks. Understandably, given the state of the law at the time, the military judge did not further explore whether NA had the sufficient capacity to consent before finding Appellant guilty of abusive sexual contact without consent. However, the military judge had a duty to "ensure [Appellant] possesse[d] an understanding of the law in relation to the facts." *Care*, 40 C.M.R. at 541.

In light of *Mendoza*, the military judge did not establish the necessary requirements for Appellant's plea to be provident. He did not tell Appellant that in order to be guilty of abusive sexual contact without consent, NA needed to be capable of consenting at the time of the offense. Nor did the military judge receive evidence that NA was capable of consenting at the time of the offense. We note, it is not necessary that at the time of the offense Appellant believed NA was awake and capable of consenting; however, in light of *Mendoza*, Appellant would need to believe at the time of his guilty plea that NA had been, in fact, awake and capable of consenting, and the military judge erred in not

establishing that belief. *See* 85 M.J. at 220 (explaining conviction under a with-out consent theory "only requires that the sexual act be performed 'without the consent' of the victim (regardless whether the accused knew or should have known of that condition)").

The Government argues that even if we accept Appellant's proposed appli-cation of *Mendoza*, this court can still find the plea provident. The Government points to the entire record to show there was evidence that NA was capable of consenting. *See Finch*, 73 M.J. at 148 (stating a guilty plea may be accepted when the record contains factual circumstances that objectively support the guilty plea). The Government asks this court to consider NA's comments in her victim impact statement as "evidence" that she was awake and capable of con-senting during Appellant's touching of her buttocks.[3] NA indicated that she woke up "scared and unsure of how [Appellant] may react if he knew [she] was awake," that she texted her "roommate for help," and Appellant "did not stop until [her] roommate came downstairs and confronted him." However, even if NA actually had been awake when Appellant was touching her buttocks, the critical requirement in Appellant's plea inquiry is what he believed at the time of making the plea.

Our concern is whether Appellant possessed an understanding of the law governing his offense in relation to the facts of his case—a requirement under *Care*, 40 C.M.R. at 541—and to what legal theory he was pleading—a require-ment under *Medina*, 66 M.J. at 26. In applying the substantial basis test, the record of trial "raises a substantial question" about Appellant's guilty plea. *In-abinette*, 66 M.J. at 322. In fact, Appellant's case raises two substantial ques-tions: (1) whether Appellant understood the legal theory of the offense to which he was pleading guilty, and (2) whether Appellant understood that to be con-victed of that offense, NA needed to be capable of consenting at the time of the offense, and not just asleep. Based on our review of the record, it appears that at the time Appellant pleaded guilty, he believed—incorrectly, in light of *Men-doza*—that he was guilty of abusive sexual contact under the "without consent" theory because at the time of the offense he believed NA was asleep.

In *Hennessy*, this court found an appellant's conviction for sexual assault factually insufficient when the appellant was charged with sexual assault without consent, but the evidence did not prove the named victim was capable of consenting. Unpub. op. at *22–23. Similarly, in the instant case the military judge's failure to explain that in order for Appellant to be guilty of abusive sexual contact without consent, NA had to first be capable of consenting, was

---

[3] We note a victim's unsworn statement is not "evidence." *United States v. Tyler*, 81 M.J. 108, 112 (C.A.A.F. 2021); *United States v. Hamilton*, 77 M.J. 579, 583 (A.F. Ct. Crim. App. 2017) (en banc) (citation omitted).

an error. Moreover, the guilty plea colloquy and stipulation of fact indicated that, when he pleaded guilty, Appellant believed NA had been asleep while he was touching her buttocks. Understandably, given the state of the law at the time, the military judge felt Appellant had satisfied the requirements for the *Care* inquiry. However, in a post-*Mendoza* landscape, this error meant the military judge abused his discretion when he accepted Appellant's guilty plea to abusive sexual contact without consent. As such, we find his guilty plea for abusive sexual contact to be improvident.

### III. CONCLUSION

The findings of guilty for Charge I and its Specification and the sentence are **SET ASIDE**. A rehearing is authorized. The record is returned to The Judge Advocate General for further proceedings consistent with this opinion. We will complete our Article 66, UCMJ, 10 U.S.C. § 866, review when the record is returned to the court.[4]



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[4] We defer review of the findings of guilty for Charge II and its Specification pending the return of the record of trial to this court for completion of our Article 66, UCMJ, review.