*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, GROSS, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Franklin L. VANEGASGONZALEZ**
Corporal (E-4), U.S. Marine Corps
*Appellant*

**No. 202500086**

_____

Decided: 22 June 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Eric A. Catto

Sentence adjudged 4 October 2024 by a general court-martial tried at Marine Corps Base Hawaii, consisting of officer and enlisted members and sentencing by military judge alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for 24 months, forfeiture of all pay and allowances, and a dishonorable discharge.

For Appellant:
*Lieutenant Commander Christopher C. McMahon, JAGC, USN*

For Appellee:
*Lieutenant Stephanie N. Fisher, JAGC, USN (argued)*
*Lieutenant K. Matthew Parker, JAGC, USN (on brief)*

Senior Judge GROSS delivered the opinion of the Court, in which Chief Judge DALY and Judge de GROOT joined.

_____

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

GROSS, Senior Judge:

A panel of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ).[1] The sole specification referred for trial alleged that Appellant did "commit a sexual act upon [Operations Specialist Third Class (OS3)] M.V., U.S. Navy, by penetrating [OS3] M.V.'s vulva with [his] penis, without the consent of [OS3] M.V."[2] Appellant asserts three assignments of error, which we summarize as follows: 1) whether the military judge erred by instructing the members that "a sleeping person cannot consent" in light of *United States v. Mendoza*;[3] 2) whether Appellant's conviction is legally sufficient; and 3) whether Appellant's conviction is factually sufficient. Having considered the record as a whole, arguments of counsel, and the pleadings of the parties, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[4]

## I. BACKGROUND

Appellant and the victim, OS3 M.V.,[5] had known each other since childhood. They grew up in the same part of New York, and Appellant was close friends with OS3 M.V.'s brother. Because of this long-standing relationship,

_____

[1] 10 U.S.C. § 920.

[2] Charge Sheet.

[3] 85 M.J. 213 (C.A.A.F. 2024).

[4] Articles 59 & 66, Uniform Code of Military Justice, 10 U.S.C. §§ 859, 866.

[5] By the time of trial, M.V. had promoted to Second Class Petty Officer. However, for sake of continuity and clarity we will refer to her by the grade and rate listed on the charge sheet.

both Appellant and O3 M.V. described their relationship as being like siblings. In the winter of 2021, OS3 M.V. was stationed at Joint Base Pearl Harbor-Hickam, and Appellant was stationed across the island of Oahu at Marine Corps Base Hawaii.

Around Christmas of 2021, Appellant and OS3 M.V. attended a party, and Appellant attempted to kiss OS3 M.V., who rejected his advances. The two remained in contact, but OS3 M.V. testified that their relationship changed after that. Appellant sent his sister text messages lamenting the negative change in his relationship with OS3 M.V. On 16 April 2022, OS3 M.V. invited Appellant and Lance Corporal (LCpl) Golf, a friend and former romantic partner, to go to a local bar that was having a music night.

Appellant was initially reluctant to go out, but OS3 M.V. offered to purchase his drinks and ultimately Appellant agreed. Lance Corporal Golf was the designated driver, and both Appellant and OS3 M.V. drank heavily at the bar. While at the bar, Appellant and OS3 M.V. did not dance together, did not flirt or otherwise have any interactions of a romantic or sexual nature. The three left at around 0100 on 17 April, and LCpl Golf drove them back to OS3 M.V.'s off-base house. During the drive, Appellant took a picture of her sleeping in the car. When the three returned home, OS3 M.V. went to her bedroom, which she shared with her three-year-old daughter.

Petty Officer M.V. testified that she woke up in the morning with Appellant on top of her, penetrating her vagina with his penis. She did not react to Appellant's actions and testified that she did not know why she did not react to the sexual assault. When asked whether she consented to Appellant's actions, OS3 M.V. testified that she did not, and further stated that "sober or drunk, [she] would never have consented" because she "had seen him as a brother."[6]

When the assault ended, Appellant left the bedroom and looked back at OS3 M.V. before returning downstairs to the couch in the living room. At that point, OS3 M.V. began calling friends and acquaintances, ultimately reaching OS2 Bravo, a co-worker of hers. Petty Officer M.V. told OS2 Bravo that Appellant had sexually assaulted her, and OS2 Bravo and his wife drove to OS3 M.V.'s house. When OS2 Bravo and his wife arrived, they found OS3 M.V. outside with her daughter in her arms. Neither OS3 M.V. nor her daughter were wearing shoes. The Bravos took OS3 M.V. and her daughter to their house, where OS3 M.V. became physically ill.

---

[6] R. at 963.

Later that day, LCpl Golf took OS3 M.V. to the hospital where OS3 M.V. underwent a sexual assault forensic examination (SAFE). The SAFE ultimately revealed that DNA consistent with Appellant was found on the exterior of OS3 M.V.'s genitals and on the crotch of her underwear. Prior to going to the hospital, OS3 M.V. texted Appellant, telling him to leave her house. Appellant asked OS3 M.V. what happened the previous night, and she replied that he had "raped me in my sleep."[7] Appellant replied later that night, stating,

> I just wanted to say I don't remember what happened last night, If I did or didn't do it, I'm not calling you a liar because it was your body that got raped but I'm also saying I'm in disbelief myself too. You're literally a sister to me and that's why I can't ever imagine myself doing something like that. If I did do it, I really and truly am deeply sorry.[8]

During opening statements, trial counsel told the members that the evidence would show that OS3 M.V. "[woke] up to [Appellant] on top of her, penetrating her vagina with his penis."[9] He continued to describe the offense, telling the members that OS3 M.V. was afraid of Appellant and that she froze. In closing, trial counsel argued to the members that the evidence showed that OS3 M.V. did not consent. He argued that when the sexual assault began, that OS3 M.V. was asleep and that "a sleeping person cannot consent." In describing OS3 M.V.'s testimony, trial counsel argued that she was asleep, and said, "That alone is enough to show that she was asleep and did not consent."[10]

Trial counsel also argued other evidence of lack of consent, including: that OS3 M.V. had previously rejected Appellant's advances; that OS3 M.V. considered Appellant to be like a brother to her; that there was no romantic or sexual interactions between the two of them at the bar; OS3 M.V.'s reaction during and after the assault; and Appellant's own actions and messages post-assault.

At one point during trial counsel's argument, he told the members, "This is not a case of [OS3 M.V.] sleeping all the way through the night, waking up . . . [and feeling like she] might have had sex."[11] Throughout trial counsel's argument, he reiterated the Government's position that OS3 M.V. was woken by

---

[7] Pros. Ex. 2 at 29–30.

[8] Pros. Ex. 2 at 30.

[9] R. at 696.

[10] R. at 1429.

[11] R. at 1433.

Appellant's penetration of her and that she did not consent to Appellant's actions at any time.

Prior to deliberations, the military judge gave the following instruction on consent:

> Consent means a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance does not constitute consent. . . . A sleeping person cannot consent. All the surrounding circumstances are to be considered in determining whether a person gave consent.[12]

Appellant did not object to this instruction or trial counsel's references to it during closing argument or rebuttal.

## II. DISCUSSION

### A. The military judge did not err in his instructions to the panel.

*1. Law*

We review claims of instructional error de novo.[13] "A military judge is required to instruct on the elements of a charged offense. These instructions 'should fairly and adequately cover the issues presented,' and should include '[s]uch other explanations, descriptions, or directions as may be necessary and which are properly requested by a party or which the military judge determines, *sua sponte*, should be given."[14]

"An appellant gets the benefit of changes to the law between the time of trial and the time of his appeal."[15] Therefore, if the law changes between the time of trial and the time of an appeal, we will treat defense counsel's failure to object as forfeiture rather than error, and will review for plain error.[16] "Under plain error review, this Court will grant relief only where (1) there was

---

[12] R. at 1407–08.

[13] *United States v. Bailey*, 77 M.J. 11, 14 (C.A.A.F. 2017) (citing *United States v. Schroder,* 65 M.J. 49, 54 (C.A.A.F. 2007)).

[14] *Id.* at 13 (quoting Rule for Courts-Martial 920(a)).

[15] *United States v. Tovarchavez*, 78 M.J. 458, 462 (C.A.A.F. 2019) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987); *United States v. Mullins*, 69 M.J. 113, 116–17 (C.A.A.F. 2010)).

[16] *Id.*

error, (2) the error was plain and obvious, and (3) the error materially prejudiced a substantial right of the accused."[17]

When reviewing claims of improper argument by a trial counsel when there was no objection at trial, we also review for plain error.[18] "The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused."[19] In assessing prejudice in the event of improper argument, courts consider "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction."[20] Thus, a conviction will only be overturned based on improper argument if "the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone."[21]

"Article 120(b), UCMJ, criminalizes sexual assault in the military and defines multiple ways in which the Government may prove the offense."[22] Two are relevant for our analysis. First, section (b)(2)(A) of the statute states that an accused who commits a sexual act upon another person without the other person's consent is guilty of sexual assault. Second, section (b)(2)(B) of the statute says that an accused who commits a sexual act upon another person when the person knows or reasonably should know that the other person is asleep is guilty of sexual assault.

In defining consent, the statute states:

> The term consent means a freely given agreement to the conduct at issue by a competent person. An expression of lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance does not constitute consent. . . . A sleeping . . . person cannot consent. . . . All the surrounding circumstances are to be considered in determining whether a person gave consent.[23]

---

[17] *United States v. Sweeney*, 70 M.J. 296, 304 (C.A.A.F. 2011).

[18] *United States v. McDonald*, 78 M.J. 669, 683 (N-M. Ct. Crim. App. 2018).

[19] *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)).

[20] *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005).

[21] *Id.*

[22] *United States v. Mendoza*, 85 M.J. 213, 218 (C.A.A.F. 2024).

[23] 10 U.S.C. § 920(g)(7).

The military judge's instruction thus mirrored the statute.

In 2019, the Court of Appeals for the Armed Forces (CAAF) considered the question of the required mens rea for violations of a prior version of Article 120 that, like the case here, prohibited sexual assault by non-consent.[24] In that case, the CAAF rejected a claim by the appellant that by making sexual assault a general intent crime, the statute did not sufficiently separate innocent from wrongful conduct. In doing so, the CAAF stated, "only *consensual* sexual intercourse is innocent. The burden is on the actor to obtain consent, rather than the victim to manifest a lack of consent."[25]

On 7 October 2024, the CAAF issued its opinion in *United States v. Mendoza,* in which it set aside the decision of the Army Court of Criminal Appeals, holding that the Government cannot prove a sexual assault without consent by merely proving that the victim was incapable of consenting.[26] Doing so, reasoned the CAAF, allows the Government to charge one theory of liability and argue another theory of liability at trial.[27] The CAAF therefore held that Article 120(b)(2)(A) "criminalizes the performance of a sexual act upon a victim who is capable of consenting but does not consent."[28]

In light of the CAAF's decision in *Mendoza,* this Court considered in *United States v. Grafton* the question of whether it was error for the military judge to instruct the members for a specification of sexual assault without consent that "a sleeping, unconscious, or incompetent person cannot consent."[29] While recognizing the Government's argument that the military judge's instructions contained the exact language of the statute passed by Congress, we found that "The Government's position here is irreconcilable with *Mendoza.*"[30]

A mere seven days after our decision in *Grafton,* the CAAF issued its opinion in *United States v. Casillas,* involving issues with similar facts to the case before us.[31] There, the Government charged the appellant with sexual assault without consent when the victim was asleep at the time the sexual assault

---

[24] *United States v. McDonald*, 78 M.J. 376 (C.A.A.F. 2019).

[25] *Id.* at 381 (emphasis in original).

[26] 85 M.J. 213, 222 (C.A.A.F. 2024).

[27] *Id.* at 220.

[28] *Id.*

[29] No. 202400055, 2025 CCA LEXIS 375, at *13 (N-M. Ct. Crim. App. Aug. 11, 2025).

[30] *Id.* at *14.

[31] 86 M.J. 94 (C.A.A.F. 2025).

began but woke up while the assault continued. In *Casillas*, the appellant requested an instruction at trial prohibiting the members from considering whether the victim was too intoxicated to consent and challenged the denial of that instruction on appeal. The appellant in *Casillas* argued that by refusing the requested instruction, Article 120(b)(2)(A) was unconstitutional because Congress's definition of consent in Article 120(g)(7) permits military judges to instruct on improper theories of liability and allows factfinders to convict on uncharged theories. In affirming the conviction, the CAAF stated that an instruction that prohibited the members from considering evidence of the victim's intoxication in determining whether she consented was an incorrect statement of the law.[32]

The CAAF then found that Article 120 was constitutional, in spite of the appellant's argument that Article 120(g)(7) permitted the Government to charge him with sexual assault without consent and then argue that the victim could not consent because she was asleep. The CAAF rejected this argument, stating that the victim woke and did not consent, which was "exactly the offense and factual theory that the Government charged."[33] While the CAAF discussed at length the instruction that the military judge declined to give in *Casillas,* it did not discuss what instructions the military judge actually provided to the panel.

The issue of what evidence the Government could rely on to prove sexual assault without consent came before the CAAF once more in *United States v. Moore.*[34] As an initial matter, the CAAF made clear that the principle relied upon in *Mendoza*, a case involving incapacitation by intoxication, also applies to cases involving sleeping victims: i.e. that the Government "'cannot . . . prove the absence of consent . . . by *merely* establishing that the victim' was incapable of consenting at the time of the sexual act."[35]

The CAAF expanded on its holding in *Mendoza*, stating, "[a] military judge also may not instruct the members that they may find the 'without . . . consent' element to be proved beyond a reasonable doubt based *solely* on evidence that the victim was asleep or incapacitated."[36] However, "the Government can offer

---

[32] *Id.* at 101.

[33] *Id.*

[34] 86 M.J. 308 (C.A.A.F. 2026).

[35] *Id.* at 312. (quoting *Mendoza*, 85 M.J. at 222).

[36] *Id.* at 313.

evidence of an alleged victim's sleep to prove the absence of consent."[37] The second principle that the CAAF set forth in *Moore* is: "if a victim *did not consent* to a sexual act before falling asleep, and the victim later *could not consent* to a sexual act while asleep, then a sexual act occurring while the victim is asleep is without . . . consent."[38] The CAAF also explained that this principle is consistent with the definition of "consent" contained within Article 120(g)(7), which states that: "All the surrounding circumstances are to be considered in determining whether a person gave consent."[39] Finally, the CAAF reiterated its holding in *Casillas*: "The third legal principle is that evidence that the victim woke up while a sexual act was occurring and did not consent is legally sufficient to establish the 'without . . . consent' element."[40]

*2. Analysis*

a. The military judge's instructions were correct.

As an initial matter, we reject the Government's contention that Appellant waived the issues present in the first AOE by failing to object at trial to the military judge's instructions. Contrary to the Government's contention, we find that the CAAF's decision in *Mendoza* represented a change in the legal landscape, and Appellant is entitled to the benefit of the law as it exists at the time of his appeal. Although the CAAF has subsequently clarified the scope of *Mendoza's* reach, it still represents a significant shift in how courts interpret the interplay between Article 120(b)(2)(A) and Article 120(g)(7).

Because Appellant did not waive the issue, but also did not object to the instructions at trial, we review for plain error. While we acknowledge that this Court in *Grafton* previously found that it was plain error for the military judge to instruct the members that "a sleeping person cannot consent" for a specification alleging sexual assault without consent, the *Grafton* Court did not have the benefit of the CAAF's further explanations in *Casillas* and *Moore*.

In light of these further clarifications, we find that Appellant has failed to show that there was plain or obvious error in the military judge's instructions. As noted, the CAAF has already stated in *McDonald* that the burden is on the actor to obtain consent. Also, given that the CAAF indicated in *Moore* that a victim who did not consent before falling asleep cannot consent when asleep,

---

[37] *Id.* at 314.

[38] *Id.* at 313 (emphasis in original).

[39] *Id.*

[40] *Id.* at 315.

the military judge's instruction is consistent not only with the statutory text but also with the CAAF's analysis of that text.

The instruction that "a sleeping person cannot consent" by itself could be read to permit the members to convict based solely on the member's determination that OS3 M.V. was asleep. However, this instruction was caveated by the military judge's next instruction, "All the surrounding circumstances are to be considered in determining whether a person gave consent." At no point did the military judge instruct the members that they could convict Appellant solely on the basis of the victim being asleep.

This case is also distinguishable from *Grafton.* In *Grafton,* the Court found the instruction problematic particularly in light of the Government's argument that the victim was either unconscious or asleep throughout the sexual assault.[41] Here, the facts are more akin to *Casillas* and *Moore,* in which there was evidence of non-consent both before and after the victim fell asleep and woke up. In light of the evidence of OS3 M.V.'s non-consent both pre- and post-sleep, the military judge's instruction that she could not consent during sleep was a correct instruction.

> b. Trial counsel's references to the military judge's instructions did not constitute prejudicial error.

Although styled as instructional error, Appellant also makes reference in his brief to the arguments by trial counsel that related to the military judge's instruction, and we will consider whether trial counsel's arguments constituted plain error. The crux of the issue here is that while the military judge did not instruct the members that OS3 M.V.'s sleeping state alone was not sufficient to find Appellant guilty, trial counsel argued this point both directly and by implication. As discussed above, we apply the test set forth in *Fletcher* in analyzing claims of prosecutorial misconduct. Having done so, we find that trial counsel's argument, if it contained any errors following the *Mendoza* decision, did not amount to plain error and did not improperly influence the members.

Considering first the severity of trial counsel's alleged misconduct, we find that any potential error was not severe. Even considering the law as it exists at the time of appeal, trial counsel's arguments that implied that the members could convict Appellant solely on the basis of OS3 M.V. being asleep were limited in frequency and duration. Rather, trial counsel effectively painted a mosaic of OS3 M.V.'s non-consent prior to, during, and after the sexual assault.

---

[41] *Grafton,* 2025 CCA LEXIS 375 at *14.

As a result, this first factor is either neutral or weighs in favor of the Government.

Second, we acknowledge that the military judge did not address any of trial counsel's specific arguments but did advise the members that to the extent that counsel's argument conflicted with the military judge's instructions, the instructions controlled. While none of the trial participants had the benefit of the CAAF's opinion in *Mendoza* or the clarifications provided in *Casillas* and *Moore*, this factor is neutral or at best weighs slightly in favor of Appellant.

Finally, we consider the strength of the evidence supporting Appellant's conviction. This factor strongly favors the Government. The evidence introduced at trial revealed that there was no indication of consent by OS3 M.V. prior to her falling asleep in her bed. Although OS3 M.V. invited (indeed, cajoled) Appellant to join her at the bar, she testified that she did so out of concern for his emotional well-being, and after they went to the bar, she had almost no interactions with him there. They did not dance, flirt, or otherwise interact in any way that would indicate an openness on her end to any physical intimacy.

While Appellant's sexual assault of OS3 M.V. began while she was asleep, OS3 M.V. testified that she woke to being penetrated and did not consent to sex. While she did not fight back, the law does not require that of her, and her explanation of being confused and scared for herself and her daughter is reasonable and credible. Finally, OS3 M.V.'s actions following the sexual assault are highly corroborative of the fact that she did not consent as she fled her own house, with her daughter and without even shoes on her feet, in the car of a colleague with whom she did not share a close relationship.

Considering all of these factors, we find that any misstatement by trial counsel regarding the law of consent as it applied to sleep under a post-*Mendoza* construct was not plain error and did not prejudice Appellant. As a result, Appellant is entitled to no relief.

**B. Appellant's conviction for sexual assault without consent is both legally and factually sufficient.**

*1. Law*

To determine legal sufficiency, we ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could

have found all the essential elements beyond a reasonable doubt."[42] In conducting this analysis, "*all of the evidence* is to be considered in the light most favorable to the prosecution."[43]

For offenses that occurred after January 2021, the UCMJ requires that prior to this Court considering whether a conviction is factually sufficient, an appellant must make a specific showing of a deficiency of proof.[44] A general disagreement with the verdict is insufficient to meet this requirement.[45]

We follow the CAAF's analysis in *United States v. Harvey* and *United States v. Csiti* in assessing the three key components of the amended Article 66(d)(1)(B), UCMJ, factual sufficiency review: (1) Appellant's specific showing of a deficiency of proof; (2) the Court affording appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence when we weigh the evidence and determine controverted questions of fact; and (3) whether this Court is "clearly convinced that the finding of guilty was against the weight of the evidence."[46]

Further, the CAAF explained in *Harvey* that the degree of deference constituting "appropriate deference to the fact that the trial court saw and heard the witnesses" will depend on the nature of the evidence at issue.[47] The CAAF specifically stated that "when the CCA can assess documents, videos, and other objective evidence just as well as the court-martial, the CCA might determine that the appropriate deference is low."[48]

*2. Analysis*

We find Appellant's conviction is both legally and factually sufficient. To prove Appellant's guilt, the prosecution was required to prove that two elements were met: first, that Appellant committed a sexual act by penetrating OS3 M.V.'s vulva with his penis; and second, that he did so without OS3 M.V.'s consent. The first element was conceded by trial defense counsel in closing argument and supported by the testimony of OS3 M.V. and the results of her

---

[42] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

[43] *Jackson*, 443 U.S. at 319 (internal citations omitted) (emphasis in original).

[44] Article 66(d)(1)(B), UCMJ, 10 U.S.C. § 866(d)(1)(B).

[45] *United States v. Valencia*, 85 M.J. 529, 535 (N-M. Ct. Crim. App. 2025).

[46] 85 M.J. 127 (C.A.A.F. 2024); 85 M.J. 414 (C.A.A.F. 2025).

[47] 85 M.J. at 130.

[48] *Id.* at 131.

SANE examination showing Appellant's DNA on the exterior of OS3 M.V.'s genitals.

Regarding the second element, the trial counsel introduced more than sufficient evidence to show that OS3 M.V. did not consent. As discussed above, the evidence of non-consent in this case was strong and spanned throughout Appellant's platonic relationship with OS3 M.V. Petty Officer M.V. testified that she did not and would never consent to sex with Appellant, and when she woke to him penetrating her, she froze until he finished. Once Appellant left her room, OS3 M.V. immediately began calling for help, finally reaching a colleague and then fled her own home with her daughter, without any shoes on her feet. All of this is evidence that a rational fact finder could consider in returning a verdict of guilty.

Appellant also attacks the legal sufficiency of his conviction, arguing that the members delivered a general verdict based on two theories of liability, one of which Appellant claims is legally insufficient under *Mendoza*. In support of his argument, Appellant cites to *Yates v. United States*, a Supreme Court decision that stands for the proposition that "the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected."[49]

We do not find *Yates* to be applicable to this case. *Yates* involved defendants alleged to have conspired to both organize the Communist Party and advocate the violent overthrow of the government. The Supreme Court found that the charge of organizing the Communist Party was barred by the statute of limitations and that the Court could not determine whether the general verdict applied to one or both of the acts alleged.[50]

Here, Appellant argues that while the Government may have proven that OS3 M.V. did not consent after she woke up, we cannot be certain of whether the members convicted on this theory or solely based on her sleeping condition at the time that the assault started. However, the parties agree that Appellant's actions in this case constituted not two, but only one ongoing course of criminal conduct.[51] Appellant's argument also ignores the principles set forth in *Moore* that establish that if there is no consent prior to sleep, a sleeping

---

[49] 354 U.S. 298, 312 (1957).

[50] *Id.*

[51] Oral Argument at 18:29 (Appellant), 42:10 (Appellee).

person cannot consent. As we have discussed above, the Government's case amply proved a lack of consent at every step in the evening.

Finally, having found that Appellant has made a specific showing of a deficiency of proof by challenging the Government's proof of non-consent, we consider the factual sufficiency of his conviction. Here, having given appropriate deference to the finder of fact, we are firmly convinced of Appellant's guilt of the Charge and its Specification beyond a reasonable doubt. Appellant's conviction is therefore factually sufficient.

## III. CONCLUSION

After careful consideration of the record, briefs, and oral arguments of appellate counsel on 21 May 2026, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[52] The findings and sentence are **AFFIRMED.**

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[52] Articles 59 & 66, UCMJ.